[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-12316
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-00081-RH-CAS


RONALD DAVID JONES,

Plaintiff - Appellant,

versus

KEITH DOWDELL,
Commissioner District One,
CLEMEY,
Customer Service Director, City
of Quincy,
JACK MCLEAN,
City Manager, City of Quincy,
ANN SHERMAN,
Customer Service Director,
GREG TAYLOR,
Code Enforcement City of Quincy,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(March 29, 2017)

Before MARTIN, JULIE CARNES, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff Ronald Jones ("Plaintiff"), proceeding *pro se* and i*n forma pauperis*, filed an action under 42 U.S.C. § 1983, alleging various constitutional and state law violations against several individuals employed by the City of Quincy, Florida.  The district court dismissed Plaintiff's claim *sua sponte* under 28 U.S.C § 1915(e)(2)(B)(ii)[1] for failing to state a claim on which relief may be granted.  Upon review, we affirm the district court's dismissal of Plaintiff's action.

## I.  INTRODUCTION

### A.  Factual Background

Plaintiff claims that on August 10, 2007, "Community Action" paid the balance of Plaintiff's outstanding utilities bill, $775, after Plaintiff made a $3.01 payment.  According to city records, however, a balance remained on Plaintiff's account, and power to his home was supposed to be shut off on that day, although Plaintiff claims it was not.

---

[1] Section 1915(e)(2)(B)(ii) states that "the court shall dismiss [an *in forma pauperis*] case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted."

On June 5, 2008, two city employees—neither of whom are defendants in this case—complained to police that Plaintiff's residence was receiving power, even though power should have been disconnected. The responding officer contacted Defendant Ms. Clemey,[2] who confirmed to the officer that Plaintiff was the current tenant and was not supposed to be receiving power as of August 10, 2007. The officer concluded there was enough evidence to request a warrant for utilities theft. The city employees subsequently shut off the utilities at Plaintiff's residence. When Plaintiff returned home that night, his neighbor informed him that the police and a "meter reader" had come to his house and cut off the lights.

Plaintiff met with Defendant Ann Sherman when he inquired about his utilities the next day. Sherman told Plaintiff that the utilities were cut because there was an outstanding bill of $1481.57. Plaintiff indicated that he did not have money to pay the outstanding bill, but wanted his power restored anyway. Sherman informed Plaintiff that he would need to get a new account in his name to have his utilities restored, but he would still be responsible for the outstanding bill. Unable to pay for two bills, Plaintiff only paid on the second account.

---

[2] Plaintiff does not include Ms. Clemey's first name in the complaint.

Plaintiff was arrested for theft of utilities on February 21, 2012—under the warrant issued in June 2008—and posted bail.[3]  Plaintiff visited Defendant Jack McLean, then City Manager, and Sherman on March 12, 2012, and showed the August 10, 2007 receipt indicating his utilities bill was paid in full.  Sherman was not able to find a cut-off order for Plaintiff's property for that date, prompting McLean to allegedly concede that the city had no case against Plaintiff.  Plaintiff appeared in court the following day.  The State Attorney declined to prosecute the case after the judge allegedly criticized the city for proceeding under a years-old warrant.  Plaintiff claims that he reached a settlement with McLean, but that McLean was fired before Plaintiff could receive his settlement.

At some point prior to McLean's termination, Defendant Greg Taylor, a code enforcement employee, went to Plaintiff's residence and mentioned that neighbors were complaining about Holy Ghost Temple, a church that Plaintiff started and runs from his home.  Taylor allegedly told Plaintiff that he intended to meet with McLean to have Holy Ghost Temple shut down because he was certain that Plaintiff was violating some city ordinance.  Plaintiff alleges that Taylor, along with other city officials, had devised the plan to have him falsely arrested for theft

---

[3]  Plaintiff brought a false arrest claim previously against the officers who obtained the warrant and arrested him, but it was dismissed with prejudice for failure to state a claim.  A panel of this Court affirmed the dismissal in an unpublished opinion, concluding that the face of the complaint showed there was probable cause to arrest Plaintiff.  *Jones v. Brown*, 649 F. App'x 889, 890, 892 (11th Cir. 2016).

of utilities as part of the city's "harassing [him] about Holy Ghost Temple and trying to shut [him] down in violation of [his] right to religious freedom."[4]

## B. Procedural History

Plaintiff has filed well over a dozen cases stemming from these events. Plaintiff's amended complaint against Defendants alleges violations of the First, Fourth, and Fourteenth Amendments, as well as a state law claim for defamation of character.[5] The magistrate judge recommended that Plaintiff's amended complaint be summarily dismissed for failure to state a claim and noted that the case was frivolous. Over Plaintiff's objection, the district court adopted the magistrate judge's Report and Recommendation and dismissed the case with prejudice. Plaintiff timely appealed.

---

[4] In his brief, Plaintiff alleges that the harassment by the city includes attempts to kill him:

> They use chemical and biological weapons against Plaintiff. The City of Quincy tampers with Plaintiff['s] car trying to kill Plaintiff and make it look like an accident. The[y] put over 100,000 killer bees at Holy Ghost Temple and all kinds of exotic snakes, fire ants, and all kinds of poison. The City of Quincy is guilty of attempted murder.

[5] Plaintiff also raises several other complaints for the first time on appeal: malicious prosecution, attempted murder, and equal protection violations. Because these allegations were made for the first time on appeal and were not raised before the district court, we need not consider them further. *See, e.g., Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

## II.  DISCUSSION

### A.  Applicable Standards

We review *de novo* the district court's dismissal of a complaint for failure to state a claim under § 1915(e)(2)(B)(ii).  *Troville v. Venz*, 303 F.3d 1256, 1259 (11th Cir. 2002).  *Pro se* complaints are held to less stringent standards than are pleadings drafted by an attorney.  *Wright v. Newsome*, 795 F.2d 964, 967 (11th Cir. 1986).

To survive a motion to dismiss, Plaintiff's complaint must state a claim that is plausible on its face, which requires Plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While "detailed factual allegations" are not required, a complaint must offer "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  In other words, pleadings that "are no more than conclusions[] are not entitled to the assumption of truth." *Id.* at 679.

### B.  Plaintiff's Federal Claims

As discussed below, we agree with the district court that Plaintiff has failed to allege any constitutional violations against each of the Defendants in this case.

6

### 1. Keith Dowdell and Jack McLean

Plaintiff has not alleged any facts that suggest Defendant Keith Dowdell[6] or McLean violated Plaintiff's constitutional rights. In addition, as Plaintiff concedes, § 1983 does not provide for liability under a theory of respondeat superior. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). So even if employees under Dowdell's or McLean's supervision violated the Constitution, Dowdell and McLean would not be liable under § 1983 unless there was a causal connection between their actions and the unconstitutional conduct. *Id.* Plaintiff alleges no facts to support such a connection. Plaintiff has therefore failed to state a claim against Dowdell or McLean.

### 2. Ann Sherman

The only interaction between Plaintiff and Sherman occurred in the context of Plaintiff inquiring about his utilities and outstanding account balances. Nothing in Plaintiff's complaint suggests that Sherman was involved in Plaintiff's arrest or any alleged infringement of his First Amendment rights. Plaintiff has therefore failed to state a claim against Sherman.

---

[6] Dowdell only appears in Plaintiff's narrative when Dowdell came to Plaintiff's house while campaigning for reelection and encouraged Plaintiff to collect a city-issued check from the interim city manager, who had Plaintiff's name on a list.

7

### 3. Ms. Clemey

Ms. Clemey is the only Defendant in this case connected with Plaintiff's arrest, but Plaintiff has no Fourth Amendment claim against her because she is not the arresting officer here.[7]  In addition, Plaintiff admits that his account had an outstanding balance of over $1400 the day after the police investigated him for utilities theft, which contradicts Plaintiff's allegation that Clemey gave false information about the status of his account to the police.  Because Plaintiff's complaint also fails to allege any facts to show that Clemey has violated Plaintiff's First Amendment rights, Plaintiff's complaint fails to state a claim against her.

### 4. Greg Taylor

Plaintiff's claims against Greg Taylor amount to nothing more than an unsupported conclusory allegation that Taylor was part of a conspiracy to have Plaintiff arrested.  No facts are alleged to support this claim, nor any facts that otherwise connect Taylor to Plaintiff's arrest.  Nor are there any facts alleged that connect Plaintiff's arrest to his religious practice.  Plaintiff has therefore failed to allege a constitutional violation against Taylor.

---

[7] False arrest claims based on a lack of probable cause and asserted under the Fourth Amendment—which is Plaintiff's claim here—lie against the arresting officers. *See Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996) ("Where a police officer lacks probable cause to make an arrest, the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest.  This false imprisonment claim under section 1983 is grounded in the Fourth Amendment's guarantee against unreasonable seizures." (internal citations omitted)).

### C.  State Law Defamation Claim

The district court properly dismissed Plaintiff's state law claim, as the federal claims were eliminated early in litigation and only a state law claim remained.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988).  On appeal, Plaintiff makes no arguments about the propriety of this dismissal, or whether the district court should have dismissed his state law claim without prejudice, rather than with prejudice.  Plaintiff has thus abandoned this issue.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

## III.  CONCLUSION

Despite the liberal construction afforded Plaintiff's complaint because of his *pro se* status, Plaintiff has failed to state any viable claims against the Defendants.  Accordingly, the district court properly dismissed Plaintiff's claim, and the district court's judgement is **AFFIRMED.**

9